647 N.W.2d 505 (2002)
In re Hon. Richard B. HALLORAN, Jr., Judge, Third Circuit Court, Detroit, Michigan.
Docket No. 121601, JTC Grievance No. 01-13524.
Supreme Court of Michigan.
July 15, 2002.
The Judicial Tenure Commission has filed a Decision and Recommendation for Order of Discipline. It is accompanied by a Waiver and Consent from the respondent judge, the Honorable Richard B. Halloran, Jr., who consents to the Commission's findings of fact and conclusions of law, and to the Commission's recommendation that he be suspended without pay for ninety days. Following our de novo review, we adopt the following findings of fact and conclusions of law as our own:
1. The respondent is a judge of the Third Circuit Court in Wayne County, Michigan, and held that position at all relevant times mentioned.
2. As a judge, the respondent is subject to all of the duties and responsibilities imposed on him by the Michigan Supreme Court, and is subject, at a minimum, to the standards for discipline set forth in MCR 9.104 and MCR 9.205.
3. The respondent admits or does not contest the following:
a. On the evening of July 26, 2001, the respondent went to the men's restroom located on the mezzanine level of the L.C. Smith Terminal at Detroit-Wayne County Metropolitan Airport;
b. At the time the respondent entered the restroom, no one else was present;
c. The respondent entered one of the six stalls in the restroom and remained there for several minutes;
d. After another male came in and entered one of the restroom stalls, the respondent moved to a stall immediately adjacent to the one occupied by that other person. (The respondent states that he had already exited the stall in which he had been prior to the other person entering the restroom. The respondent does not dispute that, in either event, he then entered the stall immediately adjacent to the one occupied by that other person.) The other person was an undercover police officer by the name of Bruce Ellison;
e. The stalls were separated by partitions that were open on the bottom, leaving space between the bottom of the partition and the floor;
f. The respondent admits tapping his foot and waving his hand so that they were visible to the occupant of the next stall (the respondent claims that Officer Ellison initiated the foot tapping, but does not recall who initiated the hand gestures; Ellison stated under oath *506 that respondent began tapping his foot and waving his hand and that the officer responded by tapping his own foot);
g. The respondent was on his knees with his pants down facing the officer's stall (the respondent admits that his pants were pulled down at the time, but does not recall being on his knees with his genitalia exposed);
h. The respondent admits pulling his pants up and exiting the stall. In his sworn statement, Officer Ellison stated that the respondent then said "Hey!" outside the officer's stall. The respondent neither admits nor denies that assertion.
i. In response to the respondent's exclaiming "Hey!", Officer Ellison opened his stall door and made a remark to the effect of, "What do you got?" or "Let me see." or "Show me your equipment.";
j. Officer Ellison avers in a sworn statement that the respondent then unbuttoned and unzipped his pants and exposed his penis (the respondent admits that he then unzipped his pants, but does not recall whether he exposed his penis to the undercover officer);
k. Officer Ellison then identified himself as a police officer and arrested the respondent. Officer Ellison then took the respondent into the hall, where they joined the officer's partner.
4. To the extent that the respondent does not recall certain details of his actions, the Commission accepts as true the statement of Officer Ellison, given under oath at the Commission's offices on September 25, 2001.
5. Although the respondent questions whether his admitted conduct violated the criminal law and notes that the prosecuting attorney filed no charges arising out of this incident, the Supreme Court has found a judge's conduct to violate the Code of Judicial Conduct without regard to whether criminal charges were filed, or even in cases in which a judge has been acquitted in criminal proceedings. See In re Loyd, 424 Mich. 514, 525-531, 384 N.W.2d 9 (1986); In re Jenkins, 437 Mich. 15, 16-18, 20, 23-24, 465 N.W.2d 317 (1991).
6. The respondent's conduct, as described and admitted, and which the Commission finds as fact based on the admission of the respondent and the sworn statement of Officer Ellison, constitutes:
a. Misconduct in office as defined by Const. 1963, art. 6, § 30 and MCR 9.205;
b. Conduct clearly prejudicial to the administration of justice as defined by Const. 1963, art. 6, § 30 and MCR 9.205(E);
c. Failure to observe high standards of conduct so that the integrity and independence of the judiciary is preserved, contrary to Canon 1 of the Michigan Code of Judicial Conduct;
d. Conduct involving impropriety and the appearance of impropriety, which erodes public confidence in the judiciary, contrary to Canon 2A of the Michigan Code of Judicial Conduct;
e. Conduct that could constitute the offense of indecent exposure, contrary to M.C.L. § 750.335a;
f. Failure to respect and observe the law and to conduct oneself at all *507 times in a manner that promotes public confidence in the integrity of the judiciary, contrary to Canon 2B of the Michigan Code of Judicial Conduct; and
g. Conduct violative of relevant portions of MCR 9.104, in that such conduct:
i. is prejudicial to the proper administration of justice, contrary to MCR 9.104(1);
ii. exposes the legal profession or the courts to obloquy, contempt, censure, or reproach, contrary to MCR 9.104(2); and
iii. violates the standards or rules of professional responsibility adopted by the Supreme Court, contrary to MCR 9.104(4).
As we conduct our de novo review of this matter, we are mindful of the criteria stated in In re Brown, 461 Mich. 1291, 1292-1293, 625 N.W.2d 744 (1999):
"[E]verything else being equal:
"(1) misconduct that is part of a pattern or practice is more serious than an isolated instance of misconduct;
"(2) misconduct on the bench is usually more serious than the same misconduct off the bench;
"(3) misconduct that is prejudicial to the actual administration of justice is more serious than misconduct that is prejudicial only to the appearance of propriety;
"(4) misconduct that does not implicate the actual administration of justice, or its appearance of impropriety, is less serious than misconduct that does;
"(5) misconduct that occurs spontaneously is less serious than misconduct that is premeditated or deliberated;
"(6) misconduct that undermines the ability of the justice system to discover the truth of what occurred in a legal controversy, or to reach the most just result in such a case, is more serious than misconduct that merely delays such discovery;
"(7) misconduct that involves the unequal application of justice on the basis of such considerations as race, color, ethnic background, gender, or religion are more serious than breaches of justice that do not disparage the integrity of the system on the basis of a class of citizenship.
"The JTC should consider these and other appropriate standards that it may develop in its expertise, when it offers its recommendations."
Applying those criteria to the present case, while mindful of the agreement between the Commission and the respondent, we accept the recommendation of the Commission and order the following public censure and suspension, as set forth below.
In addition, we observe that the recommendation of the Commission includes the respondent's agreement to take additional steps as set forth below. These are not encompassed within our order, since they are not judicial discipline. However, in accordance with rules governing judicial discipline, the Commission may recommend further discipline if the respondent fails to:
Undergo continued counseling as determined appropriate by his health care professional until he has completed the counseling program, in which case the health care professional will provide a letter to the Commission expressing his/her opinion that the respondent has successfully completed the counseling program. The counseling will occur on a schedule as determined appropriate by the health care professional, who shall provide the Commission with quarterly reports detailing the respondent's attendance *508 at those sessions. The respondent will request the health care professional in writing to convey that information to the Commission and will provide the Commission with a copy of that request.
For the reasons set forth in this order, we ORDER that the Honorable Richard B. Halloran, Jr., Judge of the Third Circuit Court, be publicly censured. This order stands as our censure. We further ORDER that the Honorable Richard B. Halloran, Jr., Judge of the Third Circuit Court, be suspended without pay from the performance of his judicial duties for a period of ninety days, effective the next business day following entry of the order.
KELLY, J., states as follows:
I believe that it is proper for an order of this Court imposing discipline on a judge to detail the discipline and the nature of the offense. However, I find this order inappropriate and excessive in its graphic and lurid detail of the offense.