668 N.W.2d 892 (2003)
In re The Honorable Thomas S. GILBERT, Judge, 86th District Court.
Docket No. 123270.
Supreme Court of Michigan.
September 25, 2003.
The Judicial Tenure Commission has filed a Decision and Recommendation for Order of Discipline. It is accompanied by a Waiver and Consent from the respondent judge, the Honorable Thomas S. Gilbert, who consents to the Commissions findings of fact and conclusions of law, and to the Commissions recommendation that he be suspended without pay for 90 days, but with credit for 28 days of paid leave time that Judge Gilbert had already taken. Following our de novo review, we adopt the following findings of fact and conclusions of law as our own:
1. Respondent is, and at all material times was, a judge of the 86th District Court for Antrim, Grand Traverse, and Leelanau Counties, Michigan.
2. As a judge, he is subject to all the duties and responsibilities imposed on him by the Michigan Supreme Court, and is subject to the standards for discipline set forth in MCR 9.104 and MCR 9.205.
3. The Commission has conducted an investigation of Grievance No. 02-14294 against Respondent.
4. On December 13, 2002, the Commission provided notice to Respondent of the charges being made in Grievance No. 02-14294 pursuant to MCR 9.207(C), in what is commonly referred to as a 28-day letter.
5. At the conclusion of its investigation, the Commission and Respondent engaged in negotiations to resolve this matter short of conducting formal proceedings. As a result of those negotiations, the Commission *893 and Respondent stipulated to certain facts concerning the allegations, and entered into a Settlement Agreement as set forth below.
6. Respondent admits that the following acts occurred:
A. On October 12, 2002, Respondent attended a Rolling Stones concert at Ford Field in Detroit, Michigan.
B. During the concert, an unknown individual passed a marijuana cigarette, which is a controlled substance under Michigan law, down the aisle in which Respondent was sitting.
C. Respondent took the marijuana cigarette, puffed it, and then passed it down the aisle.
D. The marijuana cigarette was then returned back down the aisle in the opposite direction, again passing Respondent, who puffed on the cigarette a second time, and passed it along.
E. On November 6, 2002, Respondent took a voluntary leave of absence.
F. On November 7, 2002, Respondent reported his conduct to the Judicial Tenure Commission.
G. Respondents actions were well-publicized in the press in western Michigan, received significant attention in the media around metropolitan Detroit, were referenced by national news services, and were the subject of a joke by comedian Jay Leno on The Tonight Show.
H. Respondent obtained a substance abuse evaluation by the State Bar of Michigan Lawyers and Judges Assistance Program, and subsequently completed an in-patient substance abuse treatment program at Hazelden Foundation in Center City, Minnesota, between November 17 and December 14, 2002.
I. Respondent further acknowledges that he used marijuana approximately twice per year, and that he has continued to do so since becoming a judge.
J. After successful completion of the in-patient substance abuse program, Respondent has continued treatment including attendance at Alcoholics Anonymous meetings, has consulted with others facing abuse problems to form a support network, and has entered into a Judicial Monitoring Participation Agreement with the State Bar Lawyers and Judges Assistance Program.
K. There is no evidence that Respondent has ever purchased marijuana or any other controlled substance.
L. Respondent returned to the bench on December 16, 2002, and since that date has been limited to either a civil docket, or a mixed civil/criminal docket excluding cases involving defendants who are accused of abusing controlled or intoxicating substances.
7. In consideration of Respondent's consent to discipline and his promises as to future conduct, the Commission agrees to dismiss all allegations of misconduct in the pending grievance.
8. By consenting to this recommendation for discipline, Respondent expresses his deep remorse and regret for his conduct as set forth above, and for the resulting negative impact on the public perception of judges, the institutional integrity of the judiciary, and the administration of justice.
9. Respondents conduct as admitted and described above constitutes:
(a) Misconduct in office, as defined by the Michigan Constitution of 1963, as amended, Article 6, Section 30 and MCR 9.205;
(b) Conduct clearly prejudicial to the administration of justice, as defined by the *894 Michigan Constitution of 1963, as amended, Article 6, Section 30, and MCR 9.205;
(c) Failure to establish, maintain, enforce and personally observe high standards of conduct so that the integrity and independence of the judiciary may be preserved, contrary to the Code of Judicial Conduct, Canon 1;
(d) Irresponsible or improper conduct which erodes public confidence in the judiciary, in violation of the Code of Judicial Conduct, Canon 2A;
(e) Conduct involving impropriety and the appearance of impropriety, in violation of the Code of Judicial Conduct, Canon 2A;
(f) Failure to conduct oneself at all times in a manner which would enhance the public's confidence in the integrity and impartiality of the judiciary, contrary to the Code of Judicial Conduct, Canon 2B;
(g) Conduct which is prejudicial to the proper administration of justice, in violation of MCR 9.104(A)(1);
(h) Conduct which exposes the legal profession or the courts to obloquy, contempt, censure, or reproach, in violation of MCR 9.104(A)(2);
(i) Conduct which is contrary to justice, ethics, honesty or good morals, in violation of MCR 9.104(A)(3); and
(j) Conduct that violates the criminal law of a state, contrary to MCR 9.104(A)(5).
As we conduct our de novo review of this matter, we are mindful of the criteria stated in In re Brown, 461 Mich. 1291, 1292-1293, 625 N.W.2d 744 (1999):
"[E]verything else being equal:
"(1) misconduct that is part of a pattern or practice is more serious than an isolated instance of misconduct;
"(2) misconduct on the bench is usually more serious than the same misconduct off the bench;
"(3) misconduct that is prejudicial to the actual administration of justice is more serious than misconduct that is prejudicial only to the appearance of propriety;
"(4) misconduct that does not implicate the actual administration of justice, or its appearance of impropriety, is less serious than misconduct that does;
"(5) misconduct that occurs spontaneously is less serious than misconduct that is premeditated or deliberated;
"(6) misconduct that undermines the ability of the justice system to discover the truth of what occurred in a legal controversy, or to reach the most just result in such a case, is more serious than misconduct that merely delays such discovery;
"(7) misconduct that involves the unequal application of justice on the basis of such considerations as race, color, ethnic background, gender, or religion are more serious than breaches of justice that do not disparage the integrity of the system on the basis of a class of citizenship.
"The JTC should consider these and other appropriate standards that it may develop in its expertise, when it offers its recommendations."
Applying those criteria to the present case, while mindful of the agreement between the Commission and the respondent, we have concluded that the recommended 90-day suspension is insufficient in light of the stipulated facts, Respondent admits that his use of marijuana constituted judicial misconduct. During the period that respondent was a judge and was using marijuana he was trying convicting, and sentencing individuals in his court who had been charged with marijuana offenses. We therefore order the following public censure and suspension:
*895 For the reasons set forth in this order, we ORDER that the Honorable Thomas S. Gilbert, Judge of the 86th District Court, be publicly censured. This order stands as our censure. We further ORDER that the Honorable Thomas S. Gilbert, Judge of the 86th District Court, be suspended without pay from the performance of his judicial duties for a period of 6 months, effective September 25, 2003, without credit for the earlier leave of absence.
In addition, we observe that the recommendation of the Commission includes the respondent's agreement to take additional steps as set forth below. These are not encompassed within our order, since they are not judicial discipline. However, in accordance with rules governing judicial discipline, the Commission may recommend further discipline if the respondent fails to
"[A]bide by the terms of the Judicial Monitoring Participation Agreement he made with the State Bar of Michigan Lawyers and Judges Assistance Program. Respondent has further agreed to advise a representative of the Assistance Program of this condition of the dismissal, and to instruct the representative that if any terms of the Monitoring Participation Agreement are violated, the representative shall provide a general notice to the Executive Director that a violation has occurred. Respondent has also agreed to continuing monitoring by the Commission, and to follow any directives of the Commission and/or the State Court Administrative Office."
TAYLOR, J., concurs and states as follows:
Justice Weaver is very critical of our "suppression" of her written opinion in this matter until the Court's final order was ready for issuance. Yet, it must not be forgotten that this settlement and consent process involving Judge Gilbert, the Judicial Tenure Commission, and this Court, was understood by all to be entered into on the condition of confidentiality.
I thought we could not violate that understanding. Nor do I understand why it would have been a good idea to be public throughout. The reason is that this process, which has resulted in Judge Gilbert's acceptance of the recommended discipline, could have required the Judicial Tenure Commission to adjudicate this matter had Judge Gilbert rejected the recommended discipline. Had the commission done so, it would have eventually made a discipline recommendation to this Court. If our views had been published, that would undoubtedly prejudice the commission proceedings and, importantly, be unfair to Judge Gilbert.
While Justice Weaver would dismiss that concern, I cannot. Judge Gilbert has behaved unwisely and that has brought him before us, but he, even as any other litigant who seeks justice before this Court, is entitled to a Court that calmly, deliberately, and fairly decides his case. We have, to the best of our ability, done that. To have allowed Justice Weaver midstream in this process to announce her opinion would have compromised these judicial values. While some in the public may question as unnecessarily tedious the efforts of six members of this Court to be judicious, I believe that when looked at from a longer perspective, as it, of course, some day will be, it will be seen as a situation in which mature guidance prevailed.
CORRIGAN, C.J., YOUNG, and MARKMAN, JJ., join in the concurrence of TAYLOR, J.
YOUNG, J., concurs and states as follows:
I write in concurrence because of the extraordinary character of the dissent.
*896 While I do not doubt the sincerity of my dissenting colleague's passionate feelings about this matter, I do believe that her statement, if left unanswered, is calculated to, and will, mislead the public about the nature of the judicial discipline process generally and the seriousness with which this Court addressed the concerns of judicial misconduct raised in this case.
Contrary to what some members of the public may believe, the Michigan Constitution places in the hands of the Judicial Tenure Commission (JTC) the initial responsibility for investigating allegations of judicial misconduct and for recommending to this Court a proposed sanction when misconduct has been established. Then, and only then, is this Court authorized to act by accepting, rejecting, or modifying the JTC recommendation.
As happened in this case, in some cases of alleged judicial misconduct, rather than conducting a contested hearing to establish the misconduct, the accused judge and the JTC will negotiate a "consent agreement," which is akin to a plea agreement in the criminal system. Typically, in these consent agreements, the accused judge admits to some form of unethical conduct in exchange for a negotiated and specific sanction. This Court is not bound by such a consent agreement, but our rules permit them and the parties at the JTC level negotiate them with the knowledge that, until this Court makes a final determination, these negotiated consent agreements will remain confidential. This is in recognition that no trial on the merits of the accusations has occurred. Also, because no trial has occurred, our rules permit an accused judge to withdraw from a consent agreement and proceed to trial if this Court declines to accept the consent agreement.
As in this case, when this Court renders a final determination, it publishes its decision and the sanction it has imposed.
Until this case, our dissenting colleague has respected the confidentiality of this process and has seen no need to publish to the world her final judgment on the matter until the normal process had concluded. Consequently, I am shocked that our colleague has suggested that her fellow justices have engaged in a "cover up" when our suppression orders were necessary to prevent her from issuing a public denunciation of Judge Gilbert before the process outlined in our rules had been completed.
Even a judge who has failed to live up to the responsibilities of office is entitled to a fair process. Justice Weaver stands alone in her position that she is entitled to publish her conclusions in a case before the Court itself has acted. In Michigan, an accused still has a right to a trial before an execution, not the other way around.
CORRIGAN, C.J., MICHAEL F. CAVANAGH, MARILYN J. KELLY, TAYLOR, and MARKMAN, JJ., join in the concurrence of YOUNG, J.
WEAVER, J., dissents and states as follows:
I would remove Judge Thomas Gilbert from the bench for the remainder of his term, so I respectfully dissent from the majority's six-month unpaid suspension.
While sitting in judgment of othersfining and jailing them for their violations of marijuana lawsJudge Gilbert has admitted that he repeatedly used marijuana. In addition to the obvious hypocrisy of this conduct, Judge Gilbert has misled the public in his voluntary statements to the press by actively minimizing and mischaracterizing the extent of his marijuana use. Thus, this case is not about marijuana policy or drug laws. At its core, it is about the *897 serious harm done to the public's trust and confidence in the judiciary by Judge Gilbert's misconduct.
The public is well aware that Judge Gilbert admits that he smoked marijuana at a rock concert in Detroit. In an interview with the press, Judge Gilbert publicly explained, "If I hadn't been drinking alcohol that night I wouldn't have done the most stupid thing I've done in my life, which was taking a couple of hits off a marijuana cigarette."[1]
Because Judge Gilbert has publicly portrayed that incident as a one-time indiscretion and because a six-justice majority over my dissent has suppressed two decisions in this matter, the public has not been aware that Judge Gilbert has admitted in written stipulated facts to this Court and the Judicial Tenure Commission that he has used marijuana "approximately two times per year and has continued to do so since becoming a judge."[2]
It is my intention to fully and accurately inform the public regarding the history of this case and the rules pertaining to judicial disciplinary proceedings. The history of this case before this Court is as follows:
On February 12, 2003, the Judicial Tenure Commission's recommendation of a 90-day unpaid suspension with 28 days credit for time spent in drug treatment (effectively a 62-day unpaid suspension) first came to this Court in the form of a settlement and consent agreement reached by the commission and Judge Gilbert pursuant to MCR 9.220(C). The recommended order of discipline was accompanied by stipulated facts agreed to as true by Judge Gilbert and by Judge Gilbert's verified waiver, consent and agreement.
On April 14, 2003, this Court decided as follows: two justicesMICHAEL F. CAVANAGH and MARILYN J. KELLYdetermined they would accept the Commission's recommended discipline of a 62day suspension. A majority of four justicesCORRIGAN, TAYLOR, YOUNG, and MARKMANrejected the recommended discipline as "insufficient" but failed to determine what discipline they would impose, remanded to the Commission pursuant to MCR 9.225 and requested a new recommendation or status report. I, Justice WEAVER, also rejected the recommended discipline as "insufficient," but determined that I would impose the discipline of removal of the judge for the remainder of his term and remand pursuant to MCR 9.225. I stated my reasons in a dissent. Six justicesCORRIGAN, MICHAEL F. CAVANAGH, MARILYN J. KELLY, TAYLOR, YOUNG, and MARKMANsuppressed the order of decision and the file "until further order of the Court" over my dissent objecting to the suppression.
On May 21, 2003, the Judicial Tenure Commission resubmitted the same 62day recommendation with a status report stating that Judge Gilbert offered to consent to a public censure and a six-month suspension with credit for the 28 days he spent in drug treatment. The Commission, however, declined to increase the discipline. The Commission resubmitted the same recommended 62day suspension to the Court leaving the Court to again decide whether to accept, modify, or reject it.
On September 11, 2003, the Court unanimously rejected the Commission's recommendation as "insufficient." A majority of six justicesCORRIGAN, MICHAEL *898 F. CAVANAGH, MARILYN J. KELLY, TAYLOR, YOUNG, AND MARKMANagreed that a six-month unpaid suspension would be appropriate and gave Judge Gilbert ten days to withdraw pursuant to MCR 9.225, or an order imposing a six-month unpaid suspension would enter on September 25. I, Justice WEAVER, dissented and voted for the sanction of removal. A majority of six justices CORRIGAN, MICHAEL F. CAVANAGH, MARILYN J. KELLY, TAYLOR, YOUNG, and, MARKMANagain suppressed the order of decision and the file "until entry of an order of discipline or until further order of the Court" over my dissent again objecting to the suppression.
Finally, seven months and two suppressed decisions after this case was submitted by the Judicial Tenure Commission for a decision by this Court, the public will know what this Court has known all along regarding the full extent of Judge Gilbert's admitted criminal misconduct, and he will be disciplined.
"A judge should respect and observe the law."[3] This certainly means a judge should not repeatedly violate the criminal laws. The primary purpose of judicial discipline is to help repair the damage done to the public's trust and confidence in the judicial system by judicial misconduct. To that end, the orders and decisions of this Court must appropriately sanction and attempt to correct a judge's misconduct.
Judge Gilbert's one well-publicized incident of marijuana use eroded the public's trust and confidence that judges and citizens will be treated equally and fairly. The now-revealed fact that Judge Gilbert has repeatedly used marijuana since becoming a judge will further erode the public's trust and confidence in the judiciary and judicial system. While Judge Gilbert repeatedly smoked marijuana, he sat in judgment of others for their marijuana use, fining and jailing them for their violations of the same laws he himself was violating. Such hypocrisy requires more than a six-month unpaid suspension. Only this Court's removal of Judge Gilbert from the bench would begin to repair the damage to the public's trust and confidence in the judiciary caused by his criminal misconduct and sufficiently sanction him for it.
The necessity and appropriateness of the sanction of removal is underscored when one contrasts Judge Gilbert's public statements to the press and his admissions to this Court and the Judicial Tenure Commission regarding the extent of his substance abuse.[4] In comments to the press, Judge Gilbert explained that his marijuana use was "one momentary bad decision" and stated that a "professional assessment" did not find him to be an "alcoholic."[5] Yet Judge Gilbert admitted to this Court and the Judicial Tenure Commission that he repeatedly used marijuana and that he was "diagnosed with the disease of addiction."[6]
The disparity between Judge Gilbert's public statements and his admissions to this Court and the Judicial Tenure Commission suggests an assumption that this Court would keep the further admitted illegal drug use secret from the public. For seven months, and by two suppressed decisions over my dissent, a six-justice majority did just that.
*899 What needs to be clear to all is that when this Court makes a decision to accept, reject, or modify a Judicial Tenure Commission recommendation under the court rule,[7] the Michigan Constitution requires that the decision of this Court "... shall be in writing...."[8] The Constitution provides:
Decisions of the supreme court, including all decisions on prerogative writs, shall be in writing and shall contain a concise statement of the facts and reasons for each decision and reasons for each denial of leave to appeal. When a judge dissents in whole or in part he shall give in writing the reasons for his dissents. [Const. 1963, art. 6, § 6.]
A fundamental reason for this requirement is to allow the people of this state to know and assess the decisions and dissents of the Supreme Court and its justices. The publication of the decisions and dissents is absolutely necessary for the people to know them and to be able to assess the Court's performance of its duties.
This Court is empowered by the Constitution to make rules that provide for "confidentiality and privilege of proceedings" within the judicial disciplinary process.[9] The current court rules do provide that if the Judicial Tenure Commission does not file a formal complaint, its members and staff "may not disclose the existence or contents" of a judicial disciplinary investigation.[10] But that confidentiality provision does not apply to the decisions of the Supreme Court. Thus, on April 14 and September 11, 2003, when each justice decided whether to accept, reject, or modify the recommended discipline, those decisions should not have been secreted from the public.
Plainly, "confidentiality and privilege" of judicial disciplinary proceedings does not mean suppression of the decisions of the Supreme Court. The Supreme Court has a constitutional duty to provide the public its decisions and dissents in writing. What the majority, the Judicial Tenure Commission, and every judge needs to understand is that the Supreme Court neither should be nor is under any obligation to keep its decisions regarding a judge's confessions of criminal activity secret just because those confessions were made in the Judicial Tenure Commission's process of achieving a consent agreement.
Once a recommendation for judicial discipline is before this Court and this Court renders its decision, the public needs, and has a constitutional right, to know the whole truth about a judge's wrongdoing. This information is especially vital to the public because judges are elected and may run for election again.
In addition to the above, I offer the following specific responses to the concurrence of Justice TAYLOR, joined by 3 justicesCORRIGAN, YOUNG, and MARKMANand to the concurrence of Justice YOUNG, joined by 5 justicesCORRIGAN, MICHAEL F. CAVANAGH, MARILYN J. KELLY, TAYLOR, and MARKMAN.
First, I was not silent, as suggested by Justice YOUNG, out of respect for the alleged "confidentiality of the process." I did not publish my April and September dissents or publicly discuss my position in this case because I knew that I was bound by the majority's orders of suppression.
*900 Second, there is not now nor has there ever been a court rule providing for the suppression of this Court's decisions regarding recommended public censures.[11] Moreover, in light of the constitutional requirement that decisions be in writing,[12] there can be no justifiable assumption that this Court's decisions will be confidential. As the record demonstrates, the Judicial Tenure Commission submitted this case to the Court on February 12, 2003, for a decision on its recommendation. On April 14 and September 11, a majority of this Court decided that the recommended discipline was "insufficient." Nonetheless, six justices read a confidentiality requirement into the court rules and suppressed their decisions in a case involving a recommended public censure.
The source of my colleagues' confusion may be that this is the first judicial disciplinary case to proceed under revised court rule MCR 9.225. Prior to the revision of MCR 9.225, a judge who consented to recommended discipline was bound to accept whatever discipline this Court deemed appropriate, and this Court published its decision, including the facts regarding the judge's misconduct.[13] Under the revised MCR 9.225, a judge must now be allowed to withdraw his consent if this Court rejects or modifies the recommended discipline. If the judge withdraws his consent, the court rule now provides that the case must be remanded to the Commission for "further proceedings." This cannot mean, however, that if the Court rejects or modifies the recommended discipline that the Court's decision can be suppressed because a court rule does not override the constitutional obligation of this Court to make its decisions and dissents accessible for public review.
Moreover, there was no guarantee that the Judicial Tenure Commission will further adjudicate the matter as suggested by Justice TAYLOR. Even if this Court decides and states that a recommended discipline is insufficient, as it did in this case, the Commission can decide to dismiss the case or issue a private admonishment. Indeed, the Commission conceivably could have dismissed this case following this Court's April 14 decision and remand, which would have left the public not ever knowing the full extent of Judge Gilbert's criminal misconduct.
Third, matters involving judicial discipline are not "akin to a plea agreement in the criminal system." Judicial disciplinary proceedings are neither criminal nor quasicriminal in nature.[14] Judicial disciplinary proceedings are civil matters designed to serve an entirely different purpose than the criminal justice system. The purpose of judicial disciplinary proceedings is to preserve "an independent and honorable judiciary" because "an independent and honorable judiciary is indispensable to justice in our society."[15] Judges are instructed that they must "expect to be the subject of constant public scrutiny" and must, therefore, *901 "accept restrictions on conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly."[16] Judge Gilbert had no right to have his admissions kept secret when this Court rendered its decisions in this matter, nor any justifiable reason to assume that they would be.
It thus would not have been "unfair" to Judge Gilbert to have made his admitted criminal misconduct public on April 14 or on September 11. Any concern that the publication of this Court's decisions would have "prejudiced" the further Commission proceedings is also unfounded. The Commission obviously felt no pressure or obligation to increase its recommended discipline despite a majority's decision that 62 days was insufficient. The fairness argument falls especially flat in this case given Judge Gilbert's efforts to publicly mischaracterize the extent of his misconduct and mislead the public.
In conclusion, Judge Gilbert has failed to live up to the high standards of conduct required of his office as judge. His hypocrisy and his misleading public portrayals of his misconduct reflect his failure to accept full responsibility for his actions.
There is no logical or justifiable sanction other than Judge Gilbert's removal from office for the remainder of his term, that being through noon January 1, 2005.
NOTES
[1] Traverse City Record Eagle, November 8, 2002 and November 17, 2002.
[2] Stipulated Facts, Grievance No. 02-14294, dated February 4, 2003.
[3] Canon 2(B) of the Michigan Code of Judicial Conduct.
[4] Stipulated Facts, Grievance No. 02-14294, dated February 4, 2003.
[5] Traverse City Record Eagle, November, 17, 2002, p. 3A.
[6] Stipulated Facts, Grievance No. 02-14294, dated February 4, 2003.
[7] MCR 9.225.
[8] Const. 1963, art. 6, § 6.
[9] Const. 1963, art. 6, § 30, ¶ 2.
[10] MCR 9.221(A).
[11] Only when a recommendation was for a private censure did the court rules at one time provide that this Court's decisions were confidential. Interestingly, the revised court rules no longer specify that this Court's orders of private censure must be confidential. While it seems logical that private censures would be confidential, it must be questioned whether any decision of this Court imposing an order of discipline can constitutionally be kept secret.
[12] Const. 1963, art. 6, § 6.
[13] See, e.g., In re Halloran, 466 Mich. 1219, 647 N.W.2d 505 (2002).
[14] In re Mikesell, 396 Mich. 517, 527, 243 N.W.2d 86 (1976).
[15] Michigan Code of Judicial Conduct, Canon 1.
[16] Michigan Code of Judicial Conduct, Canon 2(A).