*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BELL/BENSON, Minors.

UNPUBLISHED
November 10, 2022

No. 360305
Delta Circuit Court
Family Division
LC Nos. 21-000573-NA
        21-000574-NA
        21-000575-NA
        21-000576-NA
        21-000577-NA

Before: SAWYER, P.J., and MARKEY and SWARTZLE, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to TB, SB, MB, LB, and DB at the initial dispositional hearing, pursuant to MCL 712A.19b(3)(b)(*i*) and (j). We affirm the trial court's exercise of jurisdiction over the children, but reverse the order terminating respondent's parental rights and remand for the court to either order that petitioner provide reunification services to respondent or articulate a factual finding based on clear and convincing evidence that aggravated circumstances exist such that services are not required.

## I. AGGRAVATED CIRCUMSTANCES

Respondent argues that the trial court erred by terminating her parental rights at the initial dispositional hearing without making a judicial determination that petitioner, the Department of Health and Human Services (DHHS), was not required to provide reunification services because of the existence of aggravating circumstances. Respondent also disputes that aggravating circumstances actually existed in this case.

Because respondent did not raise this issue in the trial court and did not otherwise object to the trial court's authority to terminate her parental rights without reunification services being offered, this issue is unpreserved. *Polkton Twp v Pellegrom*, 265 Mich App 88, 95; 693 NW2d 170 (2005). Accordingly, we review this issue for plain error affecting respondent's substantial rights. *In re Pederson*, 331 Mich App 445, 463-464; 951 NW2d 704 (2020). To satisfy this standard, respondent must demonstrate: (1) that an error occurred, (2) that the error was plain, i.e.,

clear or obvious, and (3) that the error affected respondent's substantial rights. *Id*. at 464 (citations omitted). We agree that because the trial court did not make a judicial determination of aggravated circumstances, it is necessary to reverse the trial court's order terminating respondent's parental rights and remand this case to the trial court for the court to either order reunification services or explain why aggravated circumstances exist in this case such that services are not required.

Generally, petitioner has a statutory obligation to make reasonable efforts to reunify a respondent with his or her children. MCL 712A.19a(2); see also *In re Terry*, 240 Mich App 14, 26; 610 NW2d 563 (2000). Thus, a petitioner's failure to provide a respondent with a reasonable opportunity to participate in reunification services can require reversal of an order terminating parental rights. *In re Mason*, 486 Mich 142, 158-160; 782 NW2d 747 (2010). However, reasonable efforts are not required when aggravated circumstances exist. In *In re Rippy*, 330 Mich App 350, 356; 948 NW2d 131 (2019), this Court explained:

> Reasonable efforts to reunify the child and family must be made in *all* cases except those involving aggravated circumstances under MCL 712A.19a(2). *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010) (quotation marks and citation omitted). MCL 712A.19a(2)(a) states that reasonable efforts to reunify the child and family are not required if "[t]here is a judicial determination that the parent has subjected the child to aggravated circumstances as provided in section 18(1) and (2) of the child protection law, 1975 PA 238, MCL 722.638." In turn, § 18 of the Child Protection Law, MCL 722.638, provides:

>> (1) The department shall submit a petition for authorization by the court under section 2(b) of chapter XIIA of 1939 PA 288, MCL 712A.2, if 1 or more of the following apply:

>> (a) The department determines that a parent, guardian, or custodian, or a person who is 18 years of age or older and who resides for any length of time in the child's home, has abused the child or a sibling of the child and the abuse included 1 or more of the following:

>> * * *

>> (*iii*) Battering, torture, or other severe physical abuse.

>> * * *

>> (*v*) Life threatening injury.

>> * * *

>> (2) In a petition submitted as required by subsection (1), if a parent is a suspected perpetrator or is suspected of placing the child at an unreasonable risk of harm due to the parent's failure to take reasonable steps to intervene to eliminate that risk, the department shall include a request for termination of parental rights at the initial

dispositional hearing as authorized under section 19b of chapter XIIA of 1939 PA 288, MCL 712A.19b.[1]

Under MCR 3.977(E):

> The court shall order termination of the parental rights of a respondent at the initial dispositional hearing held pursuant to MCR 3.973, and shall order that additional efforts for reunification of the child with the respondent shall not be made, if
>
> (1) the original, or amended, petition contains a request for termination;
>
> (2) at the trial or plea proceedings, the trier of fact finds by a preponderance of the evidence that one or more of the grounds for assumption of jurisdiction over the child under MCL 712A.2(b) have been established;
>
> (3) at the initial disposition hearing, the court finds on the basis of clear and convincing legally admissible evidence that had been introduced at the trial or plea proceedings, or that is introduced at the dispositional hearing, that one or more facts alleged in the petition:
>
> (a) are true, and
>
> (b) establish grounds for termination of parental rights under MCL 712A.19b(3)(a), (b), (d), (e), (f), (g), (h), (i), (j), (k), (l), or (m);
>
> (4) termination of parental rights is in the child's best interests. [*In re Rippy*, 330 Mich App at 355-357 (emphasis in original).]

As respondent recognizes, this Court has previously held that even where "aggravated circumstances" are not present, services are not required if DHHS otherwise decides to request termination rather than reunification. However, as discussed in *In re Sandborn*, 337 Mich App 252, 259 n 2; 976 NW2d 44 (2021), this line of cases was based on a misconstruction of the law:

> To the extent our Court has previously stated that the DHHS "is not required to provide reunification services when termination of parental rights is the agency's goal," *In re HRC*, 286 Mich App 444, 463; 781 NW2d 105 (2009), that statement

---

[1] Other aggravated circumstances listed in MCL 722.638(a) include abuse involving "[a]bandonment of a young child," "[c]riminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate," "[l]oss or serious impairment of an organ or limb," and "[m]urder or attempted murder." MCL 722.638(1)(a).

was dicta because (1) aggravated circumstances were present in that case, (2) it has been implicitly clarified by *In re Rippy, Minor*, and (3) the case is contrary to *In re Rood*, 483 Mich 73, 99-100, 763 NW2d 587 (2009) (opinion by CORRIGAN, J.) and *id*. at 124 (CAVANAGH, J., concurring in part), and *In re Hicks/Brown*, [500 Mich 79, 85; 893 NW2d 637 (2017)]. As Judge BECKERING explained in her dissenting opinion, the general statement from *In re HRC* was taken out of context and is inconsistent with prior and subsequent binding law, a point the majority did not dispute. See *In re Rippy, Minor*, 330 Mich App at 370 n 5, 948 NW2d 131 (BECKERING, J., dissenting).

In her dissent in *In re Rippy*, Judge BECKERING stated, in pertinent part:

> In support of its contention that reasonable efforts to reunify a child with his or her parent are not required in cases in which termination is the department's goal at the initial disposition, petitioner cites MCL 712A.19b(4), MCR 3.977(E), and *In re HRC*, 286 Mich App 444, 463; 781 NW2d 105 (2009). The cited authorities confirm the accuracy of petitioner's statement, but they do not address petitioner's authorization for seeking termination in an original petition and for its entitlement to relief from its duty to provide reunification services. MCL 712A.19b(4) provides, in part, that if petitioner files a petition to terminate the parental rights to a child, the court may enter a termination order at the initial dispositional hearing, and MCR 3.977(E) sets forth the circumstances under which the court must order termination of the respondent's parental rights at the initial disposition. Neither the statute nor the court rule, however, provides authority for petitioner to file an original petition seeking termination in the first place. In *In re HRC*, 286 Mich App at 446-448, the trial court terminated the respondent's parental rights at the initial disposition hearing, in part, because he had sexually abused two of his children. This Court addressed, among other issues, whether petitioner should have provided reunification services for the respondent. Petitioner sought termination in its original petition based on the allegations of two of the victims, changed its request to temporary custody when the accusers recanted their allegations, and then refiled the termination petition when new evidence of the respondent's sexual abuse of the children emerged. This Court followed its assertion that "[p]etitioner . . . is not required to provide reunification services when termination of parental rights is the agency's goal," with the observation that, under the circumstances, MCL 722.638(1)(a)(ii) required petitioner to file an original petition seeking termination. *Id*. at 463. Thus, *In re HRC* is consistent with the principle that petitioner must provide reunification services in all cases except those involving certain exceptional circumstances. [*In re Rippy*, 330 Mich App at 370 n 5 (BECKERING, J., dissenting).]

Thus, respondent is correct that reunification services are required unless there is a "judicial determination" that aggravated circumstances exist. In *In re Simonetta*, 507 Mich 943; 959 NW2d 170 (2021), the Michigan Supreme Court reversed a trial court's order terminating the respondent's parental rights where the court terminated parental rights at the initial disposition, but failed to make an adequate finding of aggravated circumstances. The Supreme Court remanded the case to the trial court and ordered that, "[o]n remand, the circuit court shall either order that the petitioner provide reasonable services to the respondent, or articulate a factual finding based

-4-

on clear and convincing evidence that aggravated circumstances exist such that services are not required." *Id*.

Neither MCL 712A.19a(2) nor MCL 712A.19a(2)(a) state what constitutes a "judicial determination." The Supreme Court's order in *In re Simonetta*, 507 Mich 943, also does not indicate what qualifies as a judicial determination. In general, a judicial determination is a decision on a disputed matter made by a court. See, e.g., *People v Solloway*, 316 Mich App 174, 185; 891 NW2d 255 (2016) (noting that a statute is not vague if its meaning has been clarified by judicial determinations). Generally, the Michigan Supreme Court has not required trial courts to use "magic words" or formulaic pronouncements when making a determination required by a statute. See, e.g., *People v Babcock*, 469 Mich 247, 259 n 13; 666 NW2d 231 (2003), clarification den 469 Mich 1224 (2003). Instead, trial courts are only required to make brief, definite, and pertinent findings and conclusions on contested matters. See MCR 3.977(I)(1). However, "the quality of the trial court's statement must be sufficient to allow for effective appellate review." *Babcock*, 469 Mich at 259 n 3. Findings of fact are sufficient if it "appears that the trial court was aware of the issues in the case and correctly applied the law, and where appellate review would not be facilitated by requiring further explanation." *Ford Motor Co v Dep't of Treasury*, 313 Mich App 572, 589; 884 NW2d 587 (2015) (quotation omitted).

In *In re Rippy*, where DHHS sought termination at the initial disposition, the majority found that the trial court made a judicial determination that the respondent had subjected the child to aggravated circumstances, even though the trial court did not make a specific finding to that effect. This Court noted that the trial court found after the initial dispositional hearing that (1) the respondent had a severe alcohol problem and continued to consume alcohol while pregnant, (2) the child was born with severe birth defects and the court found that he would require lifelong special medical care, and (3) the trial court found that statutory grounds were established because of the

> respondent's admission that she drank alcohol throughout her pregnancy; [the child's] resulting medical symptoms of [fetal alcohol syndrome] and need for ongoing, lifelong medical treatment; and respondent's failure to seek treatment for her alcoholism or mental health issues. On these facts, the trial court concluded that statutory grounds for termination were established under MCL 712A.19b(3)(b)(i), (g), and (j). [*In re Rippy*, 330 Mich App at 358-359.]

The instant case involves a different procedural posture than *In re Rippy*, because the adjudication trial was held before a jury, which was not required to make specific findings of fact. The evidence of respondent's actions toward TB and her treatment of TB and the other children arguably support a finding that aggravated circumstances exist in this case. However, neither the trial court nor the jury made such a finding. At the preliminary hearing, the trial court apparently relied on DHHS's request for termination of parental rights at the initial disposition when it declined to order reunification services. For example, the court stated that respondent would not be permitted visitation "because the petitioner is seeking to terminate the parental rights of the respondent at this time." The trial court was aware of the issues presented, notably the allegations that respondent had assaulted TB with a piece of broken glass, that respondent had forced the children to physically discipline each other, and that the conditions of the home were deplorable. However, although the court agreed that the home was in a deplorable condition, it did not make specific findings regarding aggravated circumstances or, as most relevant to this case, whether TB

or the other children were subjected to torture or severe physical abuse.[2] Moreover, after the preliminary hearing, the court found probable cause to authorize the petition on the basis of the condition of the home and criminality perpetrated by respondent, but it did not complete the portion of the order that is used to identify the existence of aggravated circumstances. Thus, while it appears that the trial court was aware of the issues presented, it did not make sufficient findings regarding the existence of aggravated circumstances, particularly whether respondent's criminality amounted to "torture" or "severe physical abuse" to qualify as aggravated circumstances.

We also observe that the circumstances surrounding the physical altercation between respondent and TB were disputed, that the trial court failed to make specific findings related to that altercation, and that it is unclear whether respondent's actions during that altercation, even if criminal and abusive, would qualify as severe physical abuse such that further explanation by the trial court was not required. Neither MCL 722.638 nor MCL 712A.19b define "severe physical abuse." However, "abuse" is defined elsewhere in the child protective statutes. MCL 712A.13a(20) expressly applies to MCL 712A.19a and MCL 712A.19b. MCL 712A.13a(1). MCL 712A.13a (20) provides that "abuse" includes "[h]arm or threatened harm by a person to a juvenile's health or welfare that occurs through nonaccidental physical or mental injury." By describing the level of abuse necessary to avoid the provision of services to "severe physical abuse," the Legislature expressed its intent to limit this exception to the most egregious of cases. Moreover, in the criminal code statutes that proscribe child abuse, the "serious physical harm" necessary to support a charge of first-degree child abuse is defined as "any physical injury to a child that seriously impairs the child's health or physical well-being, including, but not limited to, brain damage, a skull or bone fracture, subdural hemorrhage or hematoma, dislocation, sprain, internal injury, poisoning, burn or scald, or severe cut." MCL 750.136b(1)(f).

The injuries to TB, which were documented and photographed, do not appear to rise to the level of the examples listed in MCL 750.136b(f) so as to constitute one of the more egregious cases of abuse. Although respondent cut TB with a piece of glass, the cuts were not "severe" and TB did not sustain any other injury that would rise to the level of, for example, "brain damage." Moreover, the statutes proscribing child abuse distinguish between first-degree child abuse and third-degree child abuse in part by the level of harm caused to a child. A conviction of first-degree child abuse requires proof that the defendant knowingly or intentionally caused "serious physical harm" to a child, whereas a conviction of third-degree child abuse only requires proof that the defendant caused "physical harm" to the child. MCL 750.136b(2) and (5)(a). Notably, respondent was only charged with third-degree child abuse in connection with the assault of TB. Thus, this charge does not require, and indeed would not appear to support, a finding of severe physical abuse. Therefore, although it is apparent that the trial court was aware of the general issues to be decided, this case is not one in which "appellate review would not be facilitated by requiring further explanation."

Furthermore, to the extent that a jury verdict could qualify as a "judicial determination," the general verdict in this case does not contain the necessary specificity to find that the jury found that aggravated circumstances were present in this case. The jury merely determined that a

---

[2] We note that there was evidence that respondent threatened to kill TB, but there was no evidence that TB suffered a life-threatening injury.

preponderance of the evidence established a statutory basis for jurisdiction. It was not asked or called upon to determine whether aggravated circumstances exist.

For these reasons, we reverse the trial court's order terminating respondent's rights to the children and remand for the trial court to either order petitioner to provide reunification services "or articulate a factual finding based on clear and convincing evidence that aggravated circumstances exist such that services are not required." *In re Simonetta*, 507 Mich at 943.

## II. JURISDICTION OF REMAINING CHILDREN

Next, respondent does not contest the trial court's exercise of jurisdiction over TB, but argues that the evidence did not establish a statutory basis for jurisdiction over respondent's remaining children. In particular, respondent argues that the doctrine of anticipatory neglect cannot be used to establish jurisdiction over the remaining children. We conclude that sufficient evidence supports the trial court's jurisdiction over all of the children, and that resort to the doctrine of anticipatory neglect is not necessary to establish that jurisdiction.

Under MCR 3.961(B)(4), a petition to initiate child protective proceedings must refer to "the section of the Juvenile Code relied on for jurisdiction." "To acquire jurisdiction, the factfinder must determine by a preponderance of the evidence that the child comes within the statutory requirements of MCL 712A.2." *In re Brock*, 442 Mich 101, 108-109, 499 NW2d 752 (1993). In this case, the trial court instructed the jury on the jurisdictional grounds in MCL 712A.2(b)(2), which provide that a court has jurisdiction concerning a juvenile under 18 years of age found within the county

> [w]hose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in. As used in this sub-subdivision, "neglect" means that term as defined in section 2 of the child abuse and neglect prevention act, 1982 PA 250, MCL 722.602.

MCL 722.602(d) provides:

> "Neglect" means harm to a child's health or welfare by a person responsible for the child's health or welfare that occurs through negligent treatment, including the failure to provide adequate food, clothing, shelter, or medical care, though financially able to do so, or the failure to seek financial or other reasonable means to provide adequate food, clothing, shelter, or medical care.

The trial court also instructed the jury on the definitions of "criminality," "cruelty," and "depravity" within the meaning of MCL 712A.2(b)(2).

In her argument on appeal, respondent seems to assume that respondent's assault of TB was the only evidentiary basis that could support a finding of jurisdiction, and that this singular assault could not provide a basis for finding that jurisdiction existed over the remaining children. We disagree because this argument is based on an overly narrow view of the evidence.

Apart from possibly DB, the children were subject to the same mental suffering concerning respondent's use of discipline and her conduct of forcing the children to use corporal punishment

on each other. Moreover, in addition to respondent's assault of TB, TB testified that she had seen respondent strike the other children. TB also testified that there were other occasions when respondent forced TB or SB to punish the other children by smacking their hands or using other physical punishment. SB testified that respondent forced her to discipline the other children by "like hit[ting]" them. Furthermore, in addition to the physical violence and mental suffering, testimony was presented that all of the children suffered from neglect. The petition also alleged that respondent's home was in a "deplorable" condition. At the adjudication trial, the DHHS caseworker testified about the deplorable condition of respondent's home, and photographs of the home were presented.[3] TB testified that the home was a "pigsty" and had been that way for several months before the assault. TB also testified that the children had to cook their own meals, which mostly consisted of ramen noodles or macaroni and cheese, or whatever TB could bring home from work. SB similarly testified that the children had to make their own food, and that they sometimes had to go without food for a day.

In sum, the allegations in the petition and the testimony at the trial pertained to all of the children. The evidence was not limited to respondent's assault against TB. The evidence supported a finding that all of the children suffered from abuse or neglect, and were living in an unfit home. Moreover, contrary to respondent's argument, the jury specifically found that "one or more statutory grounds alleged in the petition concerning [TB, SB, MB, LB, and DB] have been proven." Although respondent argues at length that her assault of TB could not support a finding of jurisdiction with respect to the other children under the doctrine of anticipatory neglect,[4] petitioner did not argue a theory of anticipatory neglect to support a finding of jurisdiction over respondent's other children, and the jury was not instructed on this doctrine. And as already explained, petitioner presented evidence that all of the children suffered from abuse and neglect and were living in an unfit home. Resort to this doctrine simply was not necessary to establish jurisdiction over the four younger children.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ David H. Sawyer
/s/ Jane E. Markey
/s/ Brock A. Swartzle

---

[3] From our review of the photographs, the term "deplorable" accurately describes the children's living conditions.

[4] "The doctrine of anticipatory neglect recognizes that '[h]ow a parent treats one child is certainly probative of how that parent may treat other children.'" *In re AH*, 245 Mich App 77, 84; 627 NW2d 33 (2001), quoting *In re LaFlure*, 48 Mich App 377, 392; 210 NW2d 482 (1973).